12882 J Gould v. Interface, Inc. Mr. Blackwell, whenever you're ready. And I see that you've saved five minutes for rebuttal, correct? Yes, sir. Good morning. May it please the court, my name is Keith Blackwell and I represent the appellant in this matter, J Gould. As the court is aware, there are three issues raised in the briefing. Did the district court on summary judgment misinterpret Mr. Gould's employment agreement? Did Mr. Gould preserve that issue for appellate review? And if the district court did misinterpret the employment agreement, when the agreement is properly understood, are there genuine issues of disputed fact that preclude the entry of summary judgment for Interface? I welcome any questions the court may have on any of those issues. My intent is to focus largely on the contract interpretation and the preservation. May I just ask just one question? My understanding is that you really don't dispute the facts. What you're really disputing is that they did not have the right or the discretion to determine that there was cause under the contract. That is exactly correct, Your Honor. The facts are not in dispute. It's really just that that's really the issue, the bottom line. That's right. We don't believe the facts are in dispute and we think that once the contract is properly understood as not affording deference to Interface to make a determination of cause, whether that's a qualified deference or qualified discretion or whether it's an absolute discretion, because the contract gives them no discretion, the question is, was there in fact cause? And we believe the record evidence shows that there are disputed issues of material fact. All right. So let me ask you a question. Is it your contention that you in fact, I'm going to be careful with my language here because there's a difference between positions and arguments, of course, that's banging around in this case, but that you in fact contended, let's just say, to the district court that this contract afforded no discretion or that, yeah, we didn't really contend that below, but we can contend that now because that is really just a subsidiary argument in support of a larger position that sort of the termination was wrongful? I think both of those things. All right. So let's start with number one. Tell me where in the district court you made the no discretion contention. So let me start with, from the beginning of the case, Mr. Gould took the position that the sole and definitive measure of whether he was terminated for cause was the contractual definition of cause. When Interface moved for summary judgment, they took the position that they had this sole discretion, absolute discretion, not only to terminate, but also to make a determination of cause. In response to their motion for summary judgment, Mr. Gould conceded that they did in fact have sole discretion to terminate his employment, but Mr. Gould argued in the memorandum in opposition to the motion for summary judgment, which is docket number 174-1, at page 29, Mr. Gould argued that his contract of employment limited any such discretion by specifically defining cause. On the next page of his opposition, he argued whether Mr. Gould's termination was with or without cause is dictated by the limited terms of what constitutes termination for cause, a defined term in the employment agreement. He cited two cases in the memorandum. One is in footnote 62. It's the Zoo case from the Georgia Court of Appeals, which is a case, it's among those legion of Georgia cases that involve cause determination, where the court resolves it without any apparent deference to the employer's determination of cause. Instead, the question there the Georgia Court of Appeals held was that the trial court had to interpret the agreement for itself and then sitting as the trier of fact, decide whether the evidence supported the employer's determination of cause. When you read the record, it's clear that that argument was never made that the company didn't have the discretion. That was raised, I think, maybe for the first time on your reconsideration motion for summary judgment. I think that's the first time that you maybe made the argument that they didn't have the  Was that the first time? Because I think the district court explained that even though you had extensive summary judgment briefing, a two-hour hearing, and objections, that you never raised the theory that Interface lacked sole discretion to determine cause. With one exception, Judge, it was the first time I think that we had made it that clearly and that distinctly. The one exception is that in the response to Interface's statement of undisputed material facts, Interface had put in as a undisputed fact that it had sole discretion as to the manner of termination. Mr. Gould disputed that and said explicitly, cause is a defined term not subject to the defendant's discretion. And that's at docket 174-3 at page 3. That was probably the clearest statement of this argument prior to the motion for reconsideration, but we would consider that. I mean, but at summary judgment, your issue, how you challenged it was, and I don't know if it was you, I'm sorry about that, but, is whether Interface exercised its discretion in good faith. That really was the argument below. The argument, there were several arguments, and I concede that they got a little bit muddled up in the briefing and in the argument. There was the argument that the contractual definition of cause. But you understand that there's a big difference between whether Interface exercised its discretion in good faith versus whether Interface lacked any discretion whatsoever, correct? I mean, that's a big, big jump. No, that's absolutely, that's absolutely right. I don't think on a fair reading, the only argument made in the summary judgment briefing was that there were fact questions as to good faith. I don't think there was a concession there that there was. You're not really making the good faith argument anymore, are you? No.  Yeah. And to Judge Lagoa's question, so, and you started your presentation by saying, you know, this is sort of fundamentally a question of contract interpretation, right? It seems like there are three competing interpretations. Tell me if you think I've got this right. One is that they have absolute discretion. Two, the middle, the Goldilocks position is that they've got some discretion subordinate to a good faith criterion. And three, that they have no discretion, right? That's absolutely right. And so, with respect to, I guess, the second half of the question that I asked you earlier, which was like, part one, did you make this contention below? Part two, even if you didn't, have you not forfeited it because it's just an argument in support of a larger position? I mean, doesn't our ECB case say, when we're talking about interpreting a legal text, when you're choosing among interpretations, those, in fact, are positions that are forfeitable? ECB does have one line in it, Your Honor, that suggests that. I would suggest to the court that that line from ECB is actually dicta because that case did not involve any change of position at all on the interpretation of the contract. I don't think it's particularly persuasive dicta. The court doesn't cite anything for that proposition. And I would suggest it's actually in tension, if not in outright conflict, with the court's decision in NRA Home Depot. Because in NRA Home Depot, the court may recall, Home Depot claimed on appeal that the district court had erred by applying a lodestar multiplier to an attorney fee award pursuant to a contract. It was a contractual fee award. But it did so based on an entirely different theory of the contract than it had urged below. In the district court, Home Depot had accepted that a multiplier to account for the risk taken on by counsel might be appropriate in some circumstances that the contract allowed for such a multiplier. But Home Depot took the position that under the particular facts of that case, no multiplier was warranted. When Home Depot got up to this court, Home Depot argued that the contract categorically forbade any multiplier of the lodestar to account for risk, relying on the Supreme Court's statutory attorney fee cases. This court held that this was a new argument, not a new issue, even though the court acknowledged not only was it distinctly different, it was actually inconsistent with the interpretation of the contract that Home Depot had urged in the lower court. In addition, Judge, I think Interface is trying to define the issue that has to be preserved too narrowly, too specifically. There are all sorts of levels of generality at which you can define an issue. Yes. So this gets to really the heart of my question. You're an experienced appellate lawyer. I was once an experienced appellate lawyer. I've come to believe as an appellate judge. This issue argument thing is in every case. If you squint hard enough, it's in every case. It's an evergreen issue. So can you, and I'm going to ask your colleague on the other side as well, can you give me your best sort of standard for distinguishing issues from arguments? Because I agree with you, it's a spectrum. There is a way to conceive of the issue in this case. You know, was the termination wrongful? In which case, you could make any old argument under the sun. We probably think that's not quite right, but at the other end of the spectrum, nobody's going to say, for instance, you're bound to the cases you cited to the district court. That's silly. So as you begin to squeeze in from those ridiculous poles, where do we find our line between issues and arguments? Your Honor, I'm not sure I can articulate the first line. I would suggest in this case, however, that there are three kind of articulations of the issue that almost certainly are preserved, if that's the right issue. Breach of the employment agreement has always been a disputed issue in this case. More narrowly than that, whether Mr. Gould was terminated for cause has always been a disputed issue in the case, notwithstanding that it's always been undisputed that interface determined to and ostensibly did terminate Mr. Gould for cause. And finally, who gets to decide whether Mr. Gould was terminated for cause, interface, whether it's exercising absolute discretion. Right, but that's really an interpretation of contractual language, right? That's exactly right. Because you've already conceded that there are no facts in dispute. So it's really just a question of our contractual interpretation. We think there are no ... Well, I'm sorry. We think there are facts in dispute, not on the question of contract interpretation. There's no parole evidence here, but there very much are facts in dispute about what Mr. Gould did on the night in question that was the basis for his termination. Yeah, and let me ask you about that, because the magistrate judge said and the district court adopted, that even if interface's discretion was qualified, that there was no jury issue here. In other words, even if they had to apply the definition of cause that's in the contract in good faith, there's no jury issue. Could you ... I know that's a lot for the last ... when you're over your time, but go ahead and answer my question. No, you're right. That's exactly right. The district court did, or I'm sorry, the magistrate did find that. District court, of course, adopted the magistrate's report and recommendation in toto on the breach of contract issues, but again, that's on that second tier. Judge Newsom described kind of three tiers. That's under that second tier of good faith, and I believe the magistrate's finding along those lines were even if Mr. Gould did not do everything that they contend he did on the night in question, they had enough indications from this King and Spaulding investigation that was performed for the board, notwithstanding that it was performed in just three days and they didn't even interview half of the witnesses that they ultimately would interview by the time they made a recommendation to the board, but the magistrate found that was good enough for good faith, but we have ... we are not challenging that in this court because we believe that we're actually in that final tier of contracts, like a lot of employment contracts in Georgia, that give no discretion to the employer with respect to the determination of cause, and if there's no discretion, good faith doesn't matter. Good faith certainly isn't dispositive, and I'm not even sure good faith is very relevant to the issue. The question then becomes, was the determination of cause in fact erroneous? Thank you. Thank you. Mr. Hudson. May it please the court, I'm Steve Hudson and I represent Interface. Before I address the waiver argument and the breach of contract arguments, I want to step back and emphasize one point. When a public company such as Interface receives a written charge against the acting CEO, the CEO at the time, it has to act in a particular way, and here Interface did exactly what we expect companies to do in that circumstance. It immediately retained independent counsel. It gave that independent counsel free reign to interview witnesses, to review documents. They did so. They made a report. The facts here are that Mr. Gould, prior to this, I guess, party, had been advised that he needed to act appropriately as the head of the company, and that included not drinking at company events. That was one of the things that he was told not to do, correct? Yes, in part, Your Honor. He was warned in writing a year earlier after the prior sales meeting that abuse of alcohol would not be permitted. Let me ask you, is there evidence in the record that he was provided, because under Section 5C of the contract, the company needs to provide written notice to Mr. Gould that if you're going to terminate him? There was, Your Honor, and so after Interface received the report from King and Spaulding, including the recommendation that they had grounds to terminate him for cause, on January 19th, they sent a letter to Mr. Gould, and it is in the record, and it specifically stated that he was being terminated for cause because he had violated, had willfully disregarded their instructions about how he was supposed to conduct himself. So that aspect was ... And under the contract that Mr. Gould signed, the company could terminate him with or without cause? Correct, Your Honor. Let me first now make another point, and that is about this contract. I think we need to keep something in mind here, and that is a contract between the company and a CEO is sort of an unusual contract. It is not like a contract with a sales representative or any employee. This is a contract between sophisticated parties, and it has a provision that allows the company in its sole discretion to terminate for or without cause, with or without cause, and you might ask why would someone enter into a contract like that, and that is because he was assuming the position of CEO, and the compensation was very high. The record evidence shows that if you consider all aspects of his compensation, he was compensated at about $5 million a year. In exchange for that, Interface, through its board, had the absolute discretion to decide if and when it would terminate him and how it would terminate him. So let me now address the waiver argument that has been raised, and Judge Newsom has already picked up on some language that I wanted to emphasize from the ECB decision, posing counsel, and by the way, I think the record should be clear here that Mr. Blackwell was not involved in this case through some judgment. His first involvement in the district court was in connection with the motion for reconsideration, so when we talk about waiver, for instance, we don't mean to cast any aspersions at his conduct here in terms of how he litigated the case. And technically, not to be too persnickety about it, we're really talking about forfeiture, right? Waiver involves intentionality, like an intent to give something away, whereas forfeiture is just sort of like an oops. I think that's right, but there's one aspect of the waiver argument that is intentional. There's different aspects of waiver or forfeiture that we're talking about here. We're talking about not raising what we would say is a position with respect to the interpretation of the contract in opposition to summary judgment before the magistrate judge, and then in filing objections to the court. The argument made below was really a good faith, that the company did not have good faith to make the termination. And that was the argument, and there was extensive briefing, and there was also an actual summary judgment hearing. Correct, there was a two-hour summary judgment hearing, and Judge Grimberg recounts all this in his order denying the motion for reconsideration, and he goes through it. Now, we would say that's a position in the parlance of this court's decision in ECB, and why we would say that, and although Judge Grimberg uses the term argument, what he was talking about is the position they took below, which was, you don't get summary judgment because there's an issue of good faith, and good faith is a jury issue here that should be decided by a jury. At no time before the motion for reconsideration, either in opposing the motion for summary judgment, judges R&R, did they ever take that position, and as Judge Newsom has identified, ECB says, and I'll quote, so the party cannot usually argue that a legal text should be read to mean something different on appeal than what it argued for below, a new position, or raise a new legal ground as the reason it should win a new issue. And that's precisely what we're talking about here. So whether we call it forfeiture or we call it waiver, and by waiver there is an intentional waiver here, and that is on appeal, they do not attempt to argue that the summary judgment order should reverse, should be reversed because the issue of good faith in making the cause determination is a jury issue. They've given up that argument, so that would be, I submit, an intentional waiver. But with respect to the other issues, we submit that in terms of the proper interpretation of the contract, that's a position. And to take the position in the district court that it means one thing, and then after you lose, a new counsel appears to argue for the first time a new position that the contract means something else, is what Judge Grimberg pointed out that had not been advanced before. Do you have a broader theory, ECB aside, about how to distinguish positions from arguments? The easiest one, it is not a general, comprehensive definition, but it would be with respect to a breach of contract action. And that is what ECB says, and that is, you can take a position with respect to what a contract means, and you can make different arguments on appeal that support what your position is with respect to what a contract means without forfeiture or waiver, and ECB shows us exactly how. In that case, it was an insurance coverage case, the plaintiff had always taken the same position in terms of the language at issue in that policy, and on appeal, they raised for the first time a canon of construction, a grammatical argument. And that's where ECB said, that's fine, it's the same position with respect to the mean of the contract, you haven't changed that at all, all that you've added is a new rule of construction that supports the exact same position you've taken. Now, opposing counsel mentioned the Home Depot case, and I wanted to say a word about that as well. In that case, I think it's important to emphasize that the court in Home Depot specifically said, and I quote, quote, it's a close call with respect to the waiver or forfeiture issue. And in that case, it didn't have to do with a contract interpretation, it had to do with an argument about attorney's fees in the settlement of some shareholder litigation. And the argument was that the defendants had made that no multiplier should be used, and they advanced several reasons why, but the argument on appeal, the position on appeal, was exactly the same, and that is no multiplier should be applied on appeal, they said, it should not even be allowed to be applied, as opposed to it didn't qualify to be applied. And that's what this court said was a close question. I submit that in our case, it's not a close question. And Judge Grimberg, I would submit, is probably the best judge, apart from the standard of review that the court would apply, I think he's probably the best judge to know that this is a new position you're taking, and that you haven't taken it before. So let me now address the two contract arguments that we make on appeal. The first is the argument that it should be affirmed on the merits, regardless of the waiver or forfeiture argument, because the language of Section 5C is clear and unambiguous. And by the way, the district court judge found it was clear and unambiguous in entering its summary judgment order. And there's case law that says parties can disagree about what it means, that does not make it ambiguous. That's right. That's right. And in ECB, there's a great illustration of that, in which there was a disagreement over what the language meant. They even used the rules of statutory interpretation, or contract interpretation, rather. They considered those and said, just the fact that different people can have different views doesn't mean it's ambiguous or creates a jury issue. It's still an issue of law for the court. But here, the language of Section 5C says, it's very simple, the relevant part, interface may terminate Mr. Gould in his sole discretion, whether with or without cause, at any time upon written notice. Our position is that is clear and unambiguous in terms of what the parties meant. That is further demonstrated by the disputes provision in Section 11 that says that if Mr. Gould had any claim that he was owed additional compensation, he would take that, he would file that in writing with the board, and then if he disagreed with the board's decision, he could then file an appeal to the board, all of which is totally consistent with the interpretation that the district court placed on the provision. But let me get to the alternative argument. If you were to take out that phrase, in his sole discretion, you're left with a sentence that says, interface may terminate Mr. Gould, whether with or without cause, at any time upon written notice. That is still a discretionary decision. And that's what was at issue in the district court, was whether interface had exercised that discretion in good faith. And what the district court, what both the magistrate and the district court said, was in the context in which you have that discretion, in which you have a written complaint that's made, and you go and hire independent counsel of the nature and quality of King and Spaulding, and they come and do an investigation, and they make a report, and they give a recommendation, and the board waits for that, the board receives that, and then the board acts on that recommendation. There's no genuine issue of material fact that, as to whether interface acted in good faith in carrying out what it was contractually entitled to do. Can I ask you another issues, arguments question really quickly? You can tell I just can't quite let this go. Devil's advocate, why couldn't the other side say, either to us or could have said to the board, interface lawfully terminated my client. Now the world is our oyster, we can make any argument under that umbrella issue. I mean, you can conceive of an issue that would allow for lots of leeway. I would submit, Your Honor, that that's way too broad. Well, of course, of course, of course. In the next case, where the winds are blowing in the other direction, you'll be like, oh, that would be great. I mean, I've been a lawyer. I know how this goes. So I understand that, in this case, you think it's too broad, and I'm trying to figure out why. It has to do with, I think of it this way, and maybe this is right, maybe this is wrong, but it's how I think about it, and that is, what this court is essentially saying is the parties need to make their positions known in the district court with sufficient precision so that the district court, in the first instance, knows and understands what the position is and rules on it. If you come up on appeal and you are changing the position, you've essentially now raised a new position or a new issue that the district court didn't have any ability to consider or rule on. Well, you would have to, if you were going to make the argument, let's do the hypothetical, which is that my client was not lawfully terminated, right? Well, under the contract, you could be terminated with cause or without cause. So then you'd have to explore, you'd have to ask the district court, well, we don't know what it means, what are they accusing us of? Are they accusing us of age discrimination, race discrimination, what are they accusing us of? Correct. Exactly right. I mean, you'd have to have some basis. I mean, that's a very broad statement. Right. Another example is it couldn't be, well, we raised that we're entitled to a jury trial, and that preserves all of our arguments about being entitled to a jury trial, but in the context of an action that is focused on breach of contract, they need to articulate what it is that's, what in the contract has been breached sufficient so that we can defend it and the district court in the first instance has the opportunity to consider that and to rule on that. And that's not what happened here. So for these reasons, we would submit for several different reasons, we submit that the district court's final judgment should be affirmed. Thank you. Thank you, Mr. Hudson. Mr. Blackwell, you have five minutes. Thank you. I'd like to hit on several points. First, there was a question about whether the record showed that Mr. Gould had been told not to drink at company events. He had not been told that. He had been given direction in a memorandum from the board that abuse of alcohol would not be permitted. And we think that's why there is a fact question here. It would be hard to conclude as a matter of law that consuming a drink or a drink or two at an event where alcohol is being served is an abuse of alcohol. It's always a question of degree. The undisputed evidence is that Mr. Gould consumed about four and a half glasses of alcohol over about a seven hour period that evening. And there was some evidence on their side that he appeared to be inebriated, but there was also evidence on our side. But the contract says that he can be terminated for cause or without cause. The contract says that he can be terminated when the company has cause, when the company does not have cause. He can be terminated. That's not really the issue, Your Honor. We have never disputed that they could terminate him under 5C. There is no question they have absolute discretion. They can fire him for any reason. They can fire him for no reason at all. They can act arbitrarily and capriciously in firing him. They can do so whether they have cause or whether they don't have cause. And they can do so in bad faith. That's what sole discretion, absolute discretion means. The power of termination under 5C is within their absolute discretion. The real question here is under Section 5D of the contract, which says in the event that he is terminated without cause, he is entitled to substantial severance compensation and benefits. So the question is under 5D, and I would assert this is actually the position that's preserved is that was he in fact terminated for cause? And we say no. We say there are fact issues on that. They say, well, of course he was terminated with cause because we get to decide what cause is because we have absolute discretion. That's an argument. Our counter argument to that is, no, you're misreading 5C. You don't have absolute discretion to make a determination of cause. You can absolutely decide to terminate, but you don't have absolute discretion to definitively determine cause. Well, I guess you say, though, you say our counter argument is that you don't have absolute discretion. In fact, your counter argument is you have no discretion. And that's like the pivot of the entire case, right? Your argument below certainly was you don't have absolute discretion. The question we're trying to figure out is whether now you've pivoted from that argument to a new argument, new position, whatever we're going to call it, that in fact you have no discretion. Well, and your honor, the question is whether it is a new issue or a new claim or a new position, as the ECB case put it. I think it is certainly a refined argument. This court's case law expresses a expectation, if not a hope, that as litigation matures, as the case progresses, that arguments will become more focused, more refined as the case goes on. And that's kind of the natural progression for a couple of reasons. One is just the experience of litigation. You have the benefit of the other side's briefing. You have the benefit of a magistrate's ruling or recommendation. You have the benefit of the district court's ruling on the issue. And so the arguments do get more refined as you go along. They also get more refined, and I think they get tighter and less muddled as you go along because other issues drop out of the case as the case moves along. There are kind of contending policies, really, as a matter of sound appellate litigation and adjudication. Because on the one hand, you do, as you say, you want the party's arguments to get better. I've expressed that hope myself with respect to this specific sort of issue argument distinction. On the other hand, as Judge Lagoa points out, you don't want district courts getting whipsawed. It's not fair for us to reverse a district court on a position that it was never asked to decide. And so you've got this sort of push and pull between those two contending policies, and I think it's very difficult to figure out where that line is appropriately drawn. But I'm not sure that the line that ECB draws is obviously wrong, that when you're talking about the interpretation of a piece of written law, that where there are discrete, there are like three discrete ways to interpret this language. Full discretion, partial discretion, no discretion. That pivoting between those is a meaningful shift in argumentation that might not be fair to the district court. And particularly where you've abandoned the partial discretion argument. I think that's what you're saying, right? We are no longer pursuing an argument that there would be a fact issue precluding summary judgment if they had qualified discretion. Because frankly, there's nothing in 5C that suggests qualified discretion. It's either absolute discretion or it's nothing. Because sole discretion is the only term of discretion that appears in that provision. Well, I mean, my understanding of qualified discretion would mean they have to apply the definition of cause that's in the contract. They have to act in good faith. I think part of acting in good faith would be kind of a rough resemblance of their determination to the contours outlined in the contract. That would be a part of it. Sorry, but you've abandoned the good faith argument because you're not making that anymore. We are not making the good faith argument anymore. That is correct. If I could make a couple more points in response to Judge Newsom's question. First, I would also remind the court of its decision in Endurance American Specialty Insurance. When we're talking about the level of generality at which you define the issue that has to be preserved. In that case, the court held that the issue was preserved because the question of breach, of contractual breach, was always in the case. On the question of things becoming muddled in the district court arguments, I think it is important to recall the procedural context in which all of this arose. When summary judgment, when they moved for summary judgment, there were still three claims in the case. There was the breach of contract and the tag-along attorney's fee claim, which is what we're talking about now. But there was also this federal unlawful employment practices that consumed most of the briefing. It consumed most of the argument. It consumed most of the judicial attention in the R&R. It consumed most of the judicial attention, in fact, all of the judicial attention in Judge Grimberg's summary judgment order. It is true that the district court, through the magistrate, found the contract was unambiguous at the summary judgment stage. But then on motion for reconsideration, Judge Grimberg conceded that our interpretation of the contract was at least reasonable, which if that were true, it would mean the contract is ambiguous. At the summary judgment stage, under Georgia law, you'd apply the canons. The tiebreaker canon here is you can screw it against the drafter, and that's interface. So for all those reasons, we think the question is preserved, that the district court misinterpreted this contract, which is a pure question of law, where there's some additional flex in the joints on preservation, and that we would ask this court to reverse the grant of summary judgment on the breach of contract and the derivative claim for attorney's fees. Thank you to both counsel. The court will be in recess until 9 a.m. tomorrow morning.